Hillsborough,
No. 4349.

GORDON SMITH, *by his father and next friend, & a.*

*v.*

BENSON'S WILD ANIMAL FARM, INC.

Argued October 6, 1954.

Decided October 29, 1954.

*Aaron A. Harkaway* and *Morris D. Stein,* for the plaintiffs.

*Wyman, Starr, Booth, Wadleigh & Langdell* and *Stanton E. Tefft (Mr. Tefft* orally), for the defendant.

LAMPRON, J. Considering the evidence for the plaintiffs as true and most favorably to them (*French* v. *York,* 99 N. H. 90, 91) it appears the jury could find the following: Sometime in April, 1949, Gordon Smith, eight years of age, was kicked in the back of the right knee by a rather large pony (about 5 feet 2 inches in height). The incident occurred "down back of the barn" on land leased to Benson's and maintained by it for the occupancy of its general manager and its superintendent as part of their compensation. The barn thereon was used as a garage for its beach wagon used exclusively by Mrs. Vera Lovejoy, a stockholder as well as its treasurer and general manager. Ropes and cages owned by it were also stored therein.

Mrs. Lovejoy purchased the pony involved and obtained the following receipt: "Received of Vera Lovejoy of Benson Wild Animal Farm, twenty dollars for one pony 'Trigger' A. E. February 15, 1949." The pony was kept in a box-stall on the animal farm operated nearby by the defendant until the first part of April when it was moved over to the barn on the premises in question. Because the stall therein was not suitable, Mrs. Lovejoy assigned Benson's regular carpenter to repair it. For the two days during

which the repairs were being made the pony was tied to a tree in back of the barn in an area used for parking by the animal farm.

This area had been used by children as a playground for about forty years. The plaintiffs lived about four or five houses therefrom. Robert (Bobby) Lovejoy, son of defendant's general manager, 12 years old at the time of the accident, played there before and after that day with other children including Gordon Smith and he also played at "other people's places." The Lovejoys had been living there since 1945. Gordon played with Bobby before and after the accident in the common "right across from Lovejoys" as well as down in back of the barn. He had been in the barn where he watched Bobby clean out the stall.

On the day of the accident Gordon "was going to go up by the school" when he saw a boy go around the Lovejoy house and he followed him. He did not see the pony until after he was kicked. The pony had a halter and was tied by a rope to a tree in back of the barn. The rope was more than twenty or thirty feet in length.

Gordon was first examined by Dr. Spring on May 22, 1949. He was operated on in 1950 for what is called Legg's disease. Dr. Spring who assisted in the operation thinks "very definitely that an injury to the leg by a blow on the back of the knee would be a sufficient causative injury for this particular type of pathology in this boy."

The above facts would justify a finding by the jury that Gordon Smith received the injuries complained of as a result of being kicked in the back of the knee on the day in question by a pony owned or controlled by Benson's which was tied on premises in its possession and control.

The plaintiffs do not claim that this pony was vicious. Their right of recovery is based on negligent conduct of the defendant. *Connell* v. *Putnam,* 58 N. H. 335. "In order to make out a case for the jury the plaintiff was bound to produce evidence of some relationship between the parties which would impose upon the defendants a duty of exercising care for the protection of the plaintiff." *Login* v. *Waisman,* 82 N. H. 500, 501.

On the facts the jury could find that Gordon Smith was privileged to enter and use defendant's premises by virtue of its implied consent. It could find that Bobby Lovejoy, son of defendant's general manager, had been using this locus as a play site for himself and some of the children in the neighborhood, including the plaintiff, and that this course of conduct extending over a period

of time was known to Mrs. Lovejoy. This would give Gordon the status of a licensee. *Mitchell* v. *Legarsky,* 95 N. H. 214; *Walker* v. *Bachman,* 268 N. Y. 294; Restatement, Torts, *s.* 330; Prosser, Torts, *p.* 627.

Benson's would then owe plaintiff the duty to give him reasonable information as to existing dangerous conditions not open to his observation of which it as possessor of the premises knew. *Nickerson* v. *Association,* 96 N. H. 482.

The jury could also find on the evidence that the defendant knew that ponies have a natural tendency to kick when disturbed. *Guffey* v. *Gale,* 332 Ill. App. 207; Restatement, Torts, *s.* 518, *comment* f. If the Trial Court did not consider this a matter of common knowledge, then the proffered expert testimony that they are likely to kick if while eating they are startled by sudden noises or the appearance of a child running by, should have been received in evidence. In view of the defendant's business, it might be found chargeable with special knowledge in this regard. Restatement, *supra, comment* e. The jury could find further that the placing of the pony in this pasture under the circumstances created a dangerous condition which the plaintiff would not appreciate. Restatement, Torts, *s.* 342, *comment* b. This would impose on the defendant the duty of warning him thereof and make it liable for injuries resulting from its negligent failure so to do. *Mitchell* v. *Legarsky, supra; Cook* v. *Company,* 95 N. H. 397; *Nickerson* v. *Association, supra.*

The motions for nonsuit should have been denied and the order is

*New trial.*

All concurred.