Argued April 14, reversed and remanded May 25, 1960

# BROOKS *v.* MACK
### 352 P. 2d 474

*George L. Hibbard,* Oregon City, argued the cause for the appellant. With him on the briefs were Beattie, Hibbard, Jacobs & Caldwell, Oregon City.

*James O. Goodwin,* Oregon City, argued the cause for the respondent. With him on the brief were Philip A. Levin, Portland, and Jack, Goodwin & Santos, Oregon City.

Before McALLISTER, Chief Justice, and SLOAN, O'CONNELL and DUNCAN, Justices.

SLOAN, J.

The jury awarded plaintiff a verdict for damages for injury plaintiff sustained when he fell, or was thrown, from a horse owned by defendant. Thereafter defendant filed a motion for judgment notwithstanding the verdict and, in the alternative, for a new trial. ORS 18.140 (1). The trial court allowed the motion for judgment n.o.v. and set aside the judgment entered on the jury verdict. The court did not decide the motion for a new trial. Plaintiff appeals from the judgment notwithstanding the verdict; defendant assigns as error in his brief the failure of the court to allow his motion for new trial and contends that if the judgment n.o.v. is set aside on this appeal we should then allow his motion for a new trial. ORS 19.130 (2).

The accident which injured plaintiff occurred when plaintiff was a social guest of defendant at a barbecue picnic or party defendant was giving for plaintiff and other social guests. The scene of the barbecue was at a country or rural place owned by defendant. It was apparently a place where defendant indulged in outdoor recreation and where he kept his own, as well as other, riding horses.

Plaintiff, his wife and a friend arrived at the party about 7:00 p.m. on an evening in late July. Some of the other guests had arrived before plaintiff and some of them had already been riding the horses owned or kept by defendant. Plaintiff testified that when he arrived some of the other guests, in the presence of defendant, asked plaintiff to ride horseback with them. There was testimony that defendant asked plaintiff if he had ever ridden a horse before and that plaintiff told defendant that he had not been on a horse since he had been a schoolboy about twenty years before. The evidence as to what immediately followed is conflicting. Plaintiff's evidence would show that the other guests who had asked him to ride produced a horse referred to as "Prince" and urged plaintiff to mount and ride. Plaintiff testified that defendant observed the horse and commented that plaintiff was to ride Prince. Plaintiff and the two other guests rode upon a macadam roadway for about one-half mile. Plaintiff testified that he then became unnerved by his inability to control the horse and turned the horse around to return to the starting place. Plaintiff testified about the ensuing ride and fall with more colorful description than most witnesses can muster:

"A. Well, the three of us turned around and started back. All of a sudden this horse, Prince, just took off with me.

"Q. Did you urge it to take off or anything like that?
"A. I did everything I could to stop it. I would have gladly gotten off if I could have stopped it. I pulled so hard on it that I was afraid the stirrups would—my feet were pushed into the stirrups and I kept pulling. I was afraid my feet would go through them. So I pulled them back until my

feet came clear out of the stirrups. I pulled my feet back too far.

"Q. You heard Mr. Mack say that the horse would stop when you say 'Whoa' to it. Did you say 'Whoa' to the horse?

"A. I yelled 'Whoa' all the way down the road.

"Q. Did you try pulling up on the bridle or whatever that—

"A. I pulled as hard as I could. By that time I wanted to stop. I would have gotten off and walked back.

"Q. Did you hold onto the horn?

"A. Yes, I did, with one hand.

\* \* \* \* \*

"Q. Now, what happened when you got back near the bridge?

"A. The horse seemed quite anxious to get me off its back.

"Q. Now, without trying to use horse terms or anything like that, describe what you mean by that, Mr. Brooks, if you will.

"A. The hind feet would rear up and the saddle would come up and bang me and it would throw its front feet up. It just—

"Q. At that time were your legs free and flopping?

"A. They were out of the stirrups at that time.

"Q. Now, what happened when you got down to the bridge?

"A. Well, I kept hanging on to this saddle horn as hard as I could, kept pulling on the bridle. When I got as far as the bridge I knew I was either going to be thrown or the horse fall on me or something and the next thing I remember was me going over the side. I was still hanging on and I will never forget it ever looking down and seeing that plank coming at my head and seeing also out of the corner of my eyes the horse's hoofs and legs above me."

The character of the horse, Prince, and the skill required to ride him was described by defendant and other witnesses. Some of the witnesses had on prior occasions ridden the same horse in varying circumstances and were well acquainted with Prince's habits. The evidence in regard to Prince presents some conflicts. Every witness testified that the horse was gentle, not vicious, and had never been guilty of bucking or otherwise attempting to unseat a rider. However, each witness also said that the horse was "spirited" and each witness, even the defendant's witnesses, expressed the opinion that the horse was unsafe for an inexperienced rider. One witness testified that the horse would run if the rider merely released a taut pressure on the bridle rein. The total of the testimony could well have caused the jury to believe that the horse was not safe for an inexperienced rider and that this was well known to defendant. There is some evidence that defendant knew plaintiff lacked the experience necessary to ride the horse under the circumstances involved in this case.

Defendant contends, and the trial court decided, that there was no evidence to show that the horse had been previously guilty of the exact conduct which caused plaintiff his injury in this case. Therefore, on the theory that a dog is entitled to his first bite, plaintiff cannot recover. Defendant relies on *Funkhauser v. Goodrich* (1949) 187 Or 220, 225, 210 P2d 487, and similar cases, which hold that the owner of an animal is not responsible for vicious conduct unless the owner had knowledge that the animal had the dangerous disposition. In *Schnell v. Howitt* (1938) 158 Or 586, 589, 76 P2d 1130, the court said:

> "Hence, in order for the plaintiff to recover in this action, it was necessary for him to allege and

prove that the cow in question was vicious and liable to inflict injury upon others and that this fact was known to the defendant, or, by the exercise of ordinary diligence upon his part, should have been known to him."

*O'Brien v. Gateway Stables* (1951) 104 Cal App2d 317, 319, 231 P2d 524, was a case where a rider was thrown from a horse. The court in O'Brien absolved the owner from liability because the owner of the horse had no knowledge that "the animal had [ever] indicated to appellant a disposition to pitch, run away, kick, bite, or to indulge in any other equine vice, but had been kind and docile, . . ." 231 P2d at p 525. The court held that the owner was not liable unless he had knowledge of the "animal's untrustworthiness."

■ In this case there was no evidence that Prince was vicious in any sense of that word. However, as we have indicated, there was ample evidence to show that the horse was unsafe or untrustworthy for an inexperienced rider, that defendant knew this and defendant had some knowledge that plaintiff did not possess sufficient experience to be permitted to ride the horse. We think it was for the jury to determine if defendant was negligent within the circumstances presented by this case. The trial court erred in setting aside the verdict of the jury.

We have already mentioned that the trial judge did not rule on the alternative motion for new trial. ORS 19.130 (2) provides:

"Where in the trial court a motion for judgment notwithstanding the verdict and a motion for a new trial were made in the alternative, and an appeal is taken from a judgment notwithstanding the verdict or an order granting a new trial, the Supreme Court may consider the correctness of the ruling of the trial court on either or both motions

if such ruling is assigned as erroneous in the brief of any party affected by the appeal, without the necessity of a cross-appeal."

■ That statute permits us to consider the motion for new trial. The crux of defendant's claim of error by the trial court is the refusal of the court to submit to the jury the issue of assumption of risk. To consider the issue it is necessary to return to evidence of what occurred before plaintiff got on the horse.

We have already said that there was conflict in the evidence as to that event. We have set forth plaintiff's evidence that he received no warning or notice that the horse was unsafe for him to ride. Some of defendant's witnesses testified in direct contradiction to plaintiff's story. It is only necessary to mention the testimony of one witness. He was the person that plaintiff was going to ride with. This witness was well acquainted with Prince and testified that he considered the horse unsafe for plaintiff and told him so. The witness stated:

"Q. I realize that, but you don't let kids ride a horse like [Prince] out on the road unless they have had a lot of experience.

"A. That's the way I felt about it. I didn't want Stan to ride him. I told him so.

"Q. When did you tell him this?

"A. Before we went on the ride.

"Q. You mean he actually insisted on—

"A. He insisted on riding that horse, absolutely. I mean, I was standing right there.

\* \* \* \* \*

"Q. Did you have quite a lot of discussion about Stan? About urging him not to ride Prince?

"A. I don't know how long a discussion it was, but I know I advised him several times not to ride the animal. I offered to let him ride my horse."

There is other testimony of like effect.

This is, of course, positive testimony that plaintiff had knowledge and warning and it was, therefore, for the jury to decide if this witness or plaintiff were correctly relating the facts. If the witness was to be believed then it would appear that plaintiff must have assumed the risk of riding the animal. The trial court should not have withdrawn the issue of assumption of risk. The new trial should have been allowed.

The case is reversed and a new trial ordered.