Argued September 16, reversed December 31, 1970

CHANCE, *Appellant, v.* RINGLING BROS.
BARNUM & BAILEY, COMBINED
SHOWS INC., *Respondent.*

478 P2d 613

*Gerald R. Pullen*, Portland, argued the cause for appellant. With him on the brief was James A. Luebke, Portland.

*Ridgway K. Foley, Jr.*, Portland, argued the cause for defendant. With him on the brief were Souther, Spaulding, Kinsey, Williamson & Schwabe and Ben Lombard, Jr., Portland.

Before O'Connell, Chief Justice, and Denecke, Holman and Howell, Justices.

HOWELL, J.

Plaintiff filed an action for personal injuries sustained in a fall while on her way to a circus operated by defendant at the Portland Memorial Coliseum. After a jury returned a verdict for plaintiff, the trial court granted a judgment n.o.v. for defendant, and plaintiff appeals.

In considering a motion for a judgment n.o.v. the evidence and the reasonable inferences to be drawn therefrom must be considered in the light most favorable to the party obtaining the verdict. *Yates v. Stading*, 219 Or 464, 347 P2d 839 (1959).

Plaintiff, an elderly woman, and her nephew purchased tickets to the circus and were walking together with other patrons across the coliseum grounds. Several trailers and vans housing circus personnel and their animals were parked in a line along the route. One of the trailers contained a dog and monkey owned by Oscar Konyat, an employee of the circus who performed an act with the animals. Plaintiff, while walking 10 to 20 feet from the Konyat trailer, observed an animal in the cage and moved forward a "step or two" to see the animal. When she did so, the Konyat dog, a female boxer on a chain attached to the trailer, suddenly lunged at her, snarled and bared its teeth. Plaintiff became frightened and fell and broke her ankle.

The plaintiff alleged that the defendants, Konyat and Ringling Bros., were each negligent in three particulars: failing to warn plaintiff of the presence of

the dog; failing to inspect the premises; and failing to keep the dog adequately confined.

At the conclusion of all the evidence, Ringling Bros. moved for a directed verdict on the grounds that the evidence failed to show knowledge of the propensities of the dog, failed to show the dog was not adequately confined, and failed to show that it had not made a reasonable inspection of the premises. The motion was denied.

The jury returned a verdict in favor of defendant Konyat and against his employer, Ringling Bros. Ringling Bros. moved for a judgment n.o.v. and in the alternative for a new trial. The court granted the motion for judgment n.o.v. but did not rule on the motion for a new trial.

Except for some testimony that boxer dogs in general are protective and have a tendency to jump, there was no direct evidence that Konyat or Ringling Bros. knew of any vicious propensities of the dog.

■ The general rule is that the owner of a domestic animal such as a dog is not liable for its vicious conduct unless the owner had knowledge of its dangerous disposition. *Brooks v. Mack*, 222 Or 139, 352 P2d 474 (1960); *Funkhauser v. Goodrich*, 187 Or 220, 210 P2d 487 (1949); *Schnell v. Howitt*, 158 Or 586, 76 P2d 1130 (1938).

However, a different rule applies where the negligence is charged against the occupier of the premises who has control over the premises and the animals. According to Dean Prosser: "* * * [S]cienter is of course not required where any negligence can be shown in the keeping or control of the animal." Prosser, Law of Torts (3d ed) 516, § 75.

In support of the foregoing, Dean Prosser cites *Gardner v. Koenig*, 188 Kan 135, 360 P2d 1107 (1961). There, the defendant was the owner and operator of a cattle auction yard, and the plaintiff was a business invitee. A cow, unattended and without a halter, was being moved from a pen to the ring, when it suddenly broke away and injured plaintiff. The defendant relied on the general rule that the owner of a domestic animal is not liable for injuries caused by the animal unless its dangerous propensities are known to the owner. The court pointed out that this was not an action against the owner, but against the operator of the cattle auction as the party in control of the premises. The court cited a comment from Restatement of Torts, § 518, to the effect that one who keeps a domestic animal is required to realize that even gentle animals are likely to be dangerous under particular circumstances and to exercise reasonable care to prevent foreseeable harm. The court concluded:

> "The plaintiff was not required to allege the cow was naturally vicious, as contended by the defendants, to state a cause of action. *It is not unreasonable to assume that the defendants should have anticipated some cows would become nervous, uncontrollable and resort to dangerous behavior when driven into a small enclosure, such as a sales ring, in the presence of numerous spectators where unfamiliar noises, commotion and confusion are encountered.*" 360 P2d at 1109. (Emphasis supplied.)

A similar case is *Porter v. Thompson*, 74 Cal App 2d 474, 169 P2d 40 (1946). The plaintiff, a prospective purchaser at a cattle auction conducted by defendant, was injured when a frightened cow jumped out of the sales ring. The court stated that

the defendant's lack of knowledge as to the propensities of the particular cow should not relieve them of liability, as it was not unreasonable to assume that some cows would be dangerous under the particular circumstances. The court stated the test as: What would a reasonable, prudent person be required to do under these circumstances for the protection of his invited customers?

In *Thompson v. Yellowstone Livestock Commission*, 133 Mont 403, 324 P2d 412 (1958), a cow also jumped out of a sales ring at an auction and injured plaintiff. The court held that since the plaintiff was a business invitee the defendant sales yard had a duty to use ordinary care to keep the premises in a reasonably safe condition. The court also held that the trial court properly refused an instruction that plaintiff could not recover unless she established knowledge by defendant of the cow's dangerous propensities.

In *Baley v. J. F. Hink & Son*, 133 Cal App 2d 102, 283 P2d 349 (1955), a customer in a store fell over a leashed dog belonging to another customer. No evidence was introduced as to the disposition of the dog or knowledge of such disposition on the part of the defendant store. The customer with the dog had visited the store on several previous occasions, and the court held that the store was charged with actual or constructive notice of the dangerous condition. The court also held that the defendant store had a duty to exercise reasonable care for the safety of its customers, and that it was for the jury to determine whether the store was negligent in permitting dogs to be brought into the store during business hours, whether the dog was "on a leash or not."

In *Smith v. Benson's Wild Animal Farm*, 99 NH 243, 109 A2d 39 (1954), a small boy was kicked by a pony tied to a tree on the animal farm. The area had been used for a playground by various children in the neighborhood. The plaintiff did not contend that the pony was vicious. The court held that the boy was a licensee and that the jury could have found, considering plaintiff's business of operating an animal farm, that tying the pony in the pasture under the circumstances created a dangerous condition, imposing a duty on the defendant to warn the children.

In *Barnett v. La Mesa Post No. 282*, 15 Cal 2d 191, 99 P2d 650 (1940), the plaintiff was injured by a horse during a parade sponsored by the defendant. The court held that it was a question for the jury as to whether the defendant was negligent in the supervision and management of the animals, although there was no evidence of any prior vicious propensities of the horse.

■ It is our view that the defendant Ringling Bros. had a duty to exercise reasonable care for the safety of the plaintiff. Ringling Bros. are experienced circus operators. Mrs. Konyat stated that "people do snoop" in circus areas. Ringling Bros. directed the owners of the caravans where to park on the coliseum grounds. The caravans containing trained dogs, chimpanzees and sea lions were located in an area where people—men, women and children—would pass close to the animals on their way to the circus. There were no signs warning people away from the caravans, and plaintiff testified that there were no chains or barricades separating the caravans from the pedestrians. The performance director for Ringling Bros. testified that it was his job to see that "no animal would be

allowed loose or uncaged or untied, where they could possibly cause any damage or harm to either people or the other animals." He was present at the caravans two or three times each performance, but did not feel he had any responsibility to warn anybody or do anything about the Konyat dog.

The jury was entitled to assume that reasonable care would have required the performance director to notice that people with children were walking past the caravans housing the animals and that there were no barricades to prevent them from approaching the animals or signs warning of the animals. The jury was also entitled to assume that reasonable care would have required the circus to park the caravans away from the public or to direct the owners of the animals to keep them inside or caged while the patrons were walking by, to prevent any injury to the customers.

■ We conclude that the evidence presented a jury question as to the liability of Ringling Bros., and that the court erred in granting the judgment n.o.v.

The defendant Ringling Bros. joined a motion for a new trial with its motion for judgment n.o.v. When the trial court allowed the judgment n.o.v. it failed to rule on the motion for a new trial although required to do so by ORS 18.140(3). We shall treat the failure of the trial court to rule as a denial of the motion for a new trial. *German v. Kienow's Food Stores*, 246 Or 334, 425 P2d 523 (1967). Pursuant to ORS 19.130(2), the defendant has assigned as error the failure of the court to grant the motion for a new trial.

The main thrust of the defendant's argument in support of the motion for a new trial is that the verdict exonerating Konyat, the employee of the

circus and the owner of the dog, is inconsistent with the verdict against Ringling Bros.

■ As a general rule, where the master and servant are sued jointly in an action based solely on the tortious act of the servant and the servant is exonerated, there can be no recovery against the master. However, the rule is inapplicable where there are separate grounds upon which to find the master liable. *Zeleny et ux v. Karnosh*, 224 Or 419, 356 P2d 426 (1960); *Kraft v. Montgomery Ward & Co., Inc.*, 220 Or 230, 252, 315 P2d 558, 348 P2d 239 (1960).

In the case at bar the plaintiff alleged separate acts of negligence against each defendant, Konyat and Ringling Bros.—failure to warn plaintiff of the dog's presence; failure to inspect the caravans and premises to determine if they were safe; and failure to keep the dog confined.

The trial court instructed the jury that the defendant Konyat could be liable only for failure to adequately confine the dog or failure to warn plaintiff of the presence of the dog, and that defendant Ringling Bros. could be held vicariously liable for these acts of negligence by Konyat. The court also instructed the jury that if Ringling Bros. were in control of the land and knew, or, in the exercise of reasonable care, should have known that a dangerous condition existed and failed to exercise reasonable care to warn members of the public, or failed to take steps to protect them, Ringling Bros. would be liable.

Ringling Bros., not Konyat, was the occupier or possessor of the premises where the accident occurred or where signs or barricades would be placed. The plaintiff was a business invitee of Ringling Bros. As

such it was the separate duty of Ringling Bros. to exercise reasonable care for the safety of its customers.

■ There were entirely separate grounds upon which the jury could have found against Ringling Bros. The jury could have found that Konyat was not negligent when he parked his trailer according to the directions given by Ringling Bros., and that he was not negligent in tying the dog to the back of the trailer.

On the other hand, the jury could have concluded that Ringling Bros., as an experienced circus operator, created a dangerous condition when it directed the caravans containing dogs, chimpanzees, and sea lions to park near the area where the customers were going to the circus, and that it was negligent in failing to place warning signs or barricades between the travel area and the circus caravans.

■ Ringling Bros. also assigns as error the admission of certain expert testimony from an experienced dog trainer concerning the characteristics and propensities of boxer dogs. The witness testified that boxers are a protective type of dog and have a propensity for jumping, although he admitted that he was not familiar with the Konyat dog and that dogs have different personalities within their own breed.

While jurors undoubtedly have some knowledge about the characteristics of dogs in general, they may not be familiar with the propensities of a particular breed. Apparently the trial court made this conclusion. In *Smith v. Benson's Wild Animal Farm, supra,* the court stated that expert testimony to the effect that ponies are likely to kick if they are startled by sudden noises or children running, should have been received in evidence if the trial court did not consider

such information to be a matter of common knowledge. The evidence concerning the dogs was admissible in the instant case.

We have considered the defendant's other assignments of error in its motion for a new trial and find them without merit.

Reversed with instructions to enter judgment upon the verdict.

DENECKE, J., dissenting.

The owner of a domestic animal such as a dog can be liable to persons injured by the dog upon several different bases. An owner who knows or has reason to know of "vicious propensities" in his animal is strictly liable. Section 509, 3 Restatement 19, Torts, states as follows:

> "Except as stated in § 517, a possessor of a domestic animal which he has reason to know has dangerous propensities abnormal to its class, is subject to liability for harm caused thereby to others, except trespassers on his land, although he has exercised the utmost care to prevent it from doing the harm."

This section provides that the owner is liable regardless of the exercise of utmost care to prevent harm. The propensity is not necessarily only viciousness. "The rule is also applicable where the animal is not vicious but has a dangerous tendency which is unusual and not necessary for the purposes for which such animals are usually kept." Comment c., 3 Restatement, Torts, 20. This is the basis for liability that requires scienter on the part of the owner.

Another basis for liability is negligence, rather than strict liability. An owner of a domestic animal,

not known to be abnormally dangerous, can be liable if the animal inflicts the type of harm which is normal for this class of animals and the owner has been negligent in confining or controlling the animal. Section 518, Restatement, Torts, provides:

"(1) Except as stated in Subsection (2) and §§ 504-5, one who possesses or harbors a domestic animal, which he does not have reason to know to be abnormally dangerous but which is likely to do harm unless controlled, is subject to liability for harm done by such animal if, but only if,

"(a) he fails to exercise reasonable care to confine or otherwise control it, and

"(b) the harm is of a sort which it is normal for animals of its class to do." 3 Restatement 37.

"* * * If there is not notice of the ferocious nature of the animal, the owner may, of course, still be liable for negligent keeping, but the basis of liability in the two cases must be sharply distinguished." 2 Harper and James, Torts, 833-834, § 14.11 (1956).

In my opinion this basis of liability against owners is what Prosser referred to in the quotation of Prosser by the majority. Prosser did not intend to state that negligence is only a basis for liability against occupiers and controllers of premises on which there are animals. Negligence is also a basis of liability against owners of animals.

In this category of liability, whether or not the owner knows or has reason to know of the propensities of the particular animal is irrelevant. Knowledge of the characteristics of the class is required of the owner or conclusively imputed to the owner. For example, "* * * the keeper of an ordinarily gentle bitch or cat is required to know that while caring for her puppies or kittens she is likely to attack other

animals and human beings." 3 Restatement 39, Torts § 518, Comment g. Or, "even a well-broken mare or gelding which had never shown a propensity to bite or kick may do so when running loose." 3 Restatement 38, Torts § 518, Comment d. It is no defense to an action based upon this theory that the animal had never before acted like this. If there is any evidence from which the trier of fact can find that what the animal did under the circumstances is normal or a likelihood for this class of animals under these circumstances the question of liability is for the jury.

This latter theory of liability, — negligence, was the basis for this action. The expert called by plaintiff testified that it was foreseeable that this particular dog under these particular circumstances would lunge. While the questions to the expert were framed in the language of what was foreseeable for this particular dog, an examination of the entire testimony makes it evident that the expert was in effect stating that it was normal for this class of dog under these circumstances to lunge.

The charges of negligence against the owners were:

"(1) In failing to warn plaintiff of the presence of said dog.

"* * * * *

"(3) In failing to keep dog adequately confined so as to prevent it from leaping at plaintiff."

The verdict of the jury finding the defendant owners not liable must, therefore, have been a finding either that the lunging of the dog under these circumstances was not normal for dogs of this kind under these circumstances or that the owners were not negligent in their confinement of the dog and that for either of these reasons there was no duty to warn.

The next inquiry is whether the verdict for the owner is inconsistent with the verdict against Ringling Bros.

Two bases for liability against Ringling Bros. are advanced: one, vicarious because of the owners' negligence. As the majority states, that avenue is foreclosed by the verdict for the owners. The other is on the basis of negligence by an occupier in failing to protect a business invitee against an injury that could be expected from animals permitted upon the premises. This basis for liability is stated in § 344, 2 Restatement (Second), 223-224, Torts, and plaintiff at trial and in this court urged that § 344 applied. Section 344 states:

> "A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons *or animals*, and by the failure of the possessor to exercise reasonable care to
> "(a) discover that such acts are being done or are likely to be done, or
> "(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it." (Emphasis added.)

The charge of negligence against Ringling Bros. was in failing to inspect to determine if the premises were safe for plaintiff.

Paraphrasing the above-quoted section, Ringling would be liable if it failed to use reasonable care to discover that the dog was "likely" to lunge or, if it was "likely" to lunge at people, if they failed to warn plaintiff against this danger, or otherwise protect her.

The sustaining of liability against Ringling would require that the jury find that a normal characteristic of dogs such as the boxer in this case, under these circumstances, would lunge at people. The jury, in finding for the defendant owners necessarily found it was not a normal characteristic. For this reason I am of the opinion that the verdict was inconsistent and the defendant is entitled to a new trial.

The majority states that the jury could find "that he [the owner] was not negligent in tying the dog to the back of the trailer. On the other hand, the jury could have concluded that Ringling Bros., as an experienced circus operator, created a dangerous condition when it directed the caravans containing dogs, chimpanzees, and sea lions to park near the area where the customers were going to the circus, and that it was negligent in failing to place warning signs or barricades between the travel area and the circus caravans."

In my opinion these statements are inconsistent. As stated, the jury necessarily found, in rendering a verdict for the owners, either that the dog was not likely to lunge even though chained in proximity to an area in which customers going to the circus would walk or peer into the cages, or that despite this likelihood the dog was reasonably confined. Either finding is a finding that a dangerous condition was not present.

This is not an instance in which a commercial occupier has a higher duty than an animal owner or a noncommercial occupier to make premises safe. See § 12, 1 Restatement 22, Torts. Liability is not based upon knowing or "should have known" of dangerous propensities. Liability of both the owner and Ring-

ling Bros. is based upon whether or not it is a normal characteristic of this type of dog under these circumstances to leap at a person approaching them. If it is normal, it is completely immaterial whether either defendant knew or should have known of this characteristic.