Hallard **HEALD**, Plaintiff-Respondent,

v.

Ernest E. **COX**, Defendant-Appellant.

No. 25484.

Missouri Court of Appeals, Kansas City District.

April 24, 1972.

Lee E. Wells, McKenzie, Williams, Merrick, Beamer & Wells, Kansas City, for defendant-appellant.

Don Pierce, Downs & Pierce, St. Joseph, for plaintiff-respondent.

PER CURIAM.

This is a suit for personal injuries caused by a fall from a horse. The trial resulted in a jury verdict for plaintiff in the sum of $1,750.00. Plaintiff filed a motion for new trial limited to the issue of damages only, and in connection therewith, alleged that the jury's award was "totally, wholly and grossly inadequate". Defendant, on the other hand, filed an after trial motion for judgment in accordance with his motions for directed verdict at the close of the plaintiff's evidence and at the close of all the evidence.

The trial court overruled the defendant's motion and sustained plaintiff's motion for new trial on the issue of damages only. Defendant appeals, assigning two grounds of error: (1) that the trial court should have sustained his after trial motion for judgment; or in the alternative, (2) that the trial court erred in granting a new trial limited to the issue of damages only.

I

With respect to its contention that the trial court should have directed a verdict for him, defendant makes a two-pronged attack upon the submissibility of plaintiff's case. In the first place, defendant argues that he had no legal duty to plaintiff, who was a social guest and therefore, a bare licensee. For his second argument, defendant contends that under the evidence there was no showing of negligence on the part of defendant, and further, that plaintiff should be found guilty of contributory negligence as a matter of law.

■ A. Addressing ourselves first to the question as to the matter of the defendant's legal duty, if any, it is true that the Missouri law recognizes a distinction between invitees, licensees and trespassers. However, as pointed out by Judge Shangler of this Court, in the recent case of Cunningham v. Hayes, Mo.App., 463 S.W.2d 555, 1. c. 559, these distinctions are vestigial remnants of the historical past which bear little rational relationship to the complex, personal and economic relationships of our modern age. The classifications in question remain important primarily for their recognition of the likelihood of the land possessor anticipating the presence of the visitor. As stated in the Cunningham opinion:

"And once presence becomes known, whether that of an invitee, licensee, or trespasser, the significance of status largely disappears, and a uniform duty —that of reasonable care—is owed to each as to activities conducted on the premises."

■ In any event, a land owner or possessor is liable to a licensee for "active" negligence as opposed to mere "passive" negligence. For purposes of this legal distinction, active negligence means negligence occurring in connection with activities conducted on the premises; whereas, passive negligence means that which causes danger by reason of the physical condition of the premises. Cunningham v. Hayes, supra; Cupp v. Montgomery, Mo.App., 408 S.W.2d 353, 1. c. 356.

■ Plaintiff's pleadings and proof were directed to a showing of failure by the defendant to warn of a dangerous proclivity of a riding horse which defendant was invited or permitted to ride. This type of negligence falls within the category of "active" rather than "passive" negligence. This precise point was ruled by the Virginia Supreme Court of Appeals in Bradshaw v. Minter, 206 Va. 450, 143 S.E.2d, 827, 1. c. 829. That case, like this, was an action by a social guest to recover for injuries when thrown from a horse made available to her by the defendant-host. As here, so also in the Bradshaw case, the defendant contended that there could be no recovery because the plaintiff was a mere licensee. The Virginia Supreme Court of Appeals rejected that argument as follows:

"In Virginia we have adhered to the general rule that no duty is imposed upon the owner or occupant to keep his premises in a safe and suitable condition for the

use of a licensee, and that so far as the condition of the premises is concerned the owner or occupant is only liable for any willful or wanton injury that may be done to him. 13 Mich.Jur., Negligence, § 17, p. 523, and cases there collected. See also, Prosser, Law of Torts, 2d Ed., § 77, p. 445; 38 Am.Jur., Negligence § 105, p. 767; 65 C.J.S. Negligence § 35a, p. 491.

"However, the textwriters and the later cases hold that a different rule applies where a guest is injured by reason of the activities of the host which may constitute active or affirmative negligence as distinguished from passive negligence, that is, the condition of the premises. Where the activities of the host are involved, the test should be one of reasonable care under the circumstances."

On the basis of the foregoing authorities, we hold that plaintiff's status as a licensee does not bar his recovery here.

B. We come now to defendant's second contention in support of his motion for directed verdict—namely, the contention that the evidence showed as a matter of law that defendant was not negligent and that plaintiff was contributorily negligent. A consideration of this contention requires a review of the evidence.

Defendant bought the quarter horse in question, named Little Gal, in March or April, 1968. The third time the defendant rode Little Gal after the purchase, the horse "bucked like nobody's business". However, defendant managed to get the horse under control on that occasion and was not thrown. Afterwards, defendant rode Little Gal on various occasions and noticed that she "tensed up" but she never again bucked because defendant "didn't give her a chance to."

Between the Spring of 1968 when the horse was acquired, and October 6, 1968, when plaintiff's accident occurred, Little Gal was also ridden by defendant's wife, his son Robert, and his fourteen year old grand-son Leon. These family members were all more experienced riders than plaintiff, but defendant, nevertheless, warned them "to watch her and not let her get her head or she would buck". Robert Cox testified that although Little Gal gave him no particular problem, she was "a spirited horse".

The day of the accident was a Sunday, when various members of the family gathered at the defendant's home for dinner and to watch the World Series baseball game. The game was called because of rain, and the men went outdoors where they saddled up riding horses. After a little lapse of time, plaintiff followed them outdoors where he saw his young son on a pony and defendant and Lyle Smith standing beside Little Gal. There was some confusion in the testimony as to just what happened at this point. Plaintiff testified that not only his son, but also the defendant and others urged him to ride Little Gal. Plaintiff at first declined, but subsequently he did consent and did mount Little Gal. Defendant, in his testimony, denies being present at that time and further testified that he did not know that plaintiff was riding Little Gal until just a few minutes before the accident occurred. There is no dispute concerning the fact that no one gave plaintiff any warning about any tendency of Little Gal to buck, and although plaintiff was an inexperienced rider, he made no inquiry himself with respect to the safety of the horse, nor did he ask for any instructions concerning how to ride.

Plaintiff's son on the pony, followed by plaintiff on Little Gal, rode out of the barnyard and walked down a nearby lane some fifty to one hundred feet, during which time plaintiff had no trouble controlling the horse. Then they turned around and headed back to the barnyard. At this point, plaintiff noticed a tendency of the horse to pull at the reins by pulling its head down. The pony and horse started moving faster. Plaintiff jerked his horse's head out, the horse began bucking, and plaintiff was thrown off and fell. As the result, he

broke his wrist and suffered other injuries. Defendant then came up and grabbed the horse.

■ The question now to be decided is whether, under the facts stated, defendant had a duty to warn. The applicable rule of law is stated in 4 Am.Jur.2d, Animals, § 86, p. 332, as follows:

> "In order to impose liability upon the owner of an animal which is not naturally dangerous to mankind on the basis that the owner had knowledge of the dangerous propensities of the animal, it is sufficient if the owner has seen or heard enough to convince a man of ordinary prudence of the animal's inclination to commit an injury of the class complained of. The question in each case is whether the notice was sufficient to put the owner on his guard and to require him, as an ordinarily prudent man, to anticipate the injury which has actually occurred."

In support of this general rule see: Humes v. Salerno, Mo.Sup., 351 S.W.2d 749; Cf. Robidoux v. Busch, Mo.App., 400 S.W.2d 631.

■ The evidence summarized above was sufficient upon which the jury could reasonably find that defendant knew of a dangerous proclivity by the horse Little Gal to buck; that it required special handling to control that tendency; that plaintiff to defendant's knowledge, was an inexperienced rider; and that defendant knew that plaintiff was about to ride or was riding the horse Little Gal; and that defendant had sufficient time to give plaintiff warning. The evidence at hand shows that no such warning was given, and in view of all of the permissible inferences the jury was further within reasonable bounds in finding defendant to have been negligent. Moreover, it was a legitimate question for the jury whether, under the facts in evidence, plaintiff was guilty of contributory negligence.

Under quite similar facts, the submissibility of the case to the jury was sustained in Bradshaw v. Minter, 206 Va. 450, 143 S.E.2d 827, l. c. 830:

> "While, as has been said, there is no evidence that this horse was vicious, there is ample evidence to warrant the finding that it was unsafe or untrustworthy for an inexperienced rider and that the defendant knew or should have known this.

> "Accepting the testimony of Mrs. Bradshaw and her husband as true, it was for the jury to say whether the defendant was guilty of ordinary negligence in inviting or permitting her to ride this horse without first ascertaining whether she was an experienced and capable rider, without warning her of the characteristics and propensities of the animal, and the dangers incident to the situation. We likewise hold that it was for the jury to say whether the plaintiff was guilty of contributory negligence or assumed the risk of an accident in riding the horse under the related circumstances."

A similar result was reached on comparable facts in Brooks v. Mack, 222 Or. 139, 352 P.2d 474. In that case, a social guest sued for personal injuries sustained when he was thrown from a horse owned by the defendant-host. The jury found for the plaintiff, but the trial court entered judgment for the defendant notwithstanding the verdict. The Oregon Supreme Court reversed that action, holding that a submissible case for the jury had been made. The court emphasized the testimony that the horse in question was "spirited" and that the horse was unsafe for an inexperienced rider. The court then proceeded to rule as follows:

> "In this case there was no evidence that Prince was vicious in any sense of that word. However, as we have indicated, there was ample evidence to show that the horse was unsafe or untrustworthy for an inexperienced rider, that defendant knew this and defendant had some knowledge that plaintiff did not possess sufficient experience to be permitted to ride the horse. We think it was

for the jury to determine if defendant was negligent within the circumstances presented by this case. The trial court erred in setting aside the verdict of the jury."

See also the annotation "Liability of owner or bailer of horse for injuries by horse to hirer or bailee thereof", 15 A.L.R.2d 1313, 1. c. 1314, where it is stated:

"The rule that if the bailment is gratuitous, and the bailor of the chattel knows of defects in it rendering it dangerous for the purpose for which it is ordinarily used, or for which he is aware it is intended, and he fails to tell the bailee, he is liable for injuries resulting seems to apply to a bailment of animals."

We conclude that under the facts, the case was properly submitted to the jury. The court below did not err in overruling defendant's motions for a directed verdict.

## II

Defendant's second assignment of error is that the trial court erred in granting a new trial limited to the issue of damages only.[1] We have concluded that defendant is correct in this contention.

■ The trial court unquestionably was authorized to grant a new trial limited to the single issue of damages, under appropriate circumstances. Rule 78.01, V.A.M.R. The granting of such a limited new trial has frequently been sustained. See for example, Underwood v. Brockmeyer, Mo. Sup., 318 S.W.2d 192; Williams v. Kansas City, Mo.Sup., 274 S.W.2d 261; Wessels v. Smith, Mo.Sup., 341 S.W.2d 104; Sapp v. Key, Mo.Sup., 287 S.W.2d 775; Lilly v. Boswell, 362 Mo. 444, 242 S.W.2d 73.

■ However, there are certain circumstances where in the exercise of its judicial

discretion, the trial court should not grant such a limited new trial. All of the cases, including those cited by plaintiff, place a restriction upon the trial court's discretion in this regard, where the granting of the limited new trial would be unfair and unjust to the defendant. Just when such an injustice would result depends upon the peculiar circumstances of each case. As stated in Bischoff v. Dods, Mo.App., 405 S.W.2d 514, 1. c. 520:

"We are in agreement with the general principle that, where there is no error except such as affects the amount of damages, a new trial can and often should be limited to the issue of damages, Anno., 85 A.L.R.2d 9, 80–83, but there is no set rule which governs this question in every case."

■ Our review of the record in this case convinces us that it would be unfair to the defendant here to permit a new trial confined solely to the issue of damages. The factors which persuade us to this result are as follows:

(1) The plaintiff's case is a marginal one on the facts. The evidence as to the dangerous propensities of Little Gal is far from overwhelming. Even more important, there is considerable question whether defendant had adequate time and a sufficient opportunity to warn plaintiff before the accident occurred.

(2) The family relationship between the parties cannot be ignored. For example, we have the unusual situation here of the plaintiff calling the defendant (his father-in-law) as his own witness.

(3) Plaintiff, in his motion for a new trial, characterized the jury verdict as being "grossly" inadequate. In Artstein v. Pallo, 388 S.W.2d 877, the Missouri Supreme Court en banc held that a verdict

---

1. No issue is raised as to the propriety of the grant of a new trial on the basis of inadequacy of damages, as where no submissible case is made.

which is grossly inadequate demonstrates such passion and prejudice on the part of the jury as to vitiate the entire verdict and to prevent the granting of a new trial on the limited issue of damages only. Cf. Nance v. Kimbrow, Mo.Sup., 476 S.W.2d 560. Even though the trial court in the case did not find the verdict to be "grossly" inadequate, we cannot ignore that characterization which the plaintiff himself placed upon the verdict which he now seeks to retain, at least in part.

Plaintiff urges us to adopt a rule to the effect that a new trial on the issue of damages only is improper "only where there is a substantial showing that there was some misconduct at the trial so gross that the issues are not then severable". The invitation to adopt such a rule is enticing, since it would greatly ease the burden of an appellate court. However, such a mechanical test finds no support in the cases and would be inconsistent with the past declarations of the courts of this State.

A more troublesome problem is the extent of deference which an appellate court should accord to the trial court's determination concerning the propriety of limiting the new trial solely to the issue of damages. The easy answer would be to defer in every case to the presumption of correctness attending the trial court's action. Unfortunately, an appellate court cannot escape its hard duty to exercise its own independent judgment on all of the circumstances of each particular case in order to accomplish justice between the litigants. A painstaking review of the record in this case leaves us with the settled conviction that justice cannot be done to the defendant here, if the new trial is limited to the issue of damages only.

Accordingly, the judgment below is affirmed, except with respect to the scope of the new trial. In the latter respect, the judgment is reversed and the cause is remanded with directions that the order for a new trial encompass all issues.