Argued February 5, affirmed April 2, 1976.

MOODY, *Appellant,*

*v.*

RASMUSSEN, *Respondent.*

547 P2d 623

*Jeffrey A. Babener* of McMenamin, Joseph & Herrell, Portland, argued the cause and filed briefs for appellant.

*Thomas Sauberli* of Vergeer, Samuels, Roehr & Sweck, Portland, argued the cause and filed a brief for respondent.

BRYSON, J.

## BRYSON, J.

Plaintiff brought this action to recover for injuries he sustained when he fell from defendant's horse. The jury returned a verdict in defendant's favor and plaintiff appeals from the judgment entered on the verdict.

Plaintiff alleged that his injuries were caused by the negligence of defendant in one or more of the following particulars:

"(1) In allowing and encouraging the Plaintiff herein to ride a horse which was not 'broken' for saddle riding.

"(2) In allowing and encouraging the Plaintiff herein to ride a dangerous animal, when he knew that the animal was dangerous.

"(3) In failing to saddle the horse properly and in such a manner as to prevent the saddle from slipping out of position and onto the horse's stomach."

After plaintiff rested, defendant moved to strike each of the three allegations of negligence in plaintiff's complaint on the grounds that there was no evidence to support the same. The court allowed the motion as to allegations (1) and (2) and submitted the case to the jury on plaintiff's third allegation of negligence.

The plaintiff contends that "[t]he focal issue of this appeal is whether or not the trial judge erred in removing the following factual issue from determination by the jury: was the seller of this horse negligent in failing to warn a prospective buyer that the horse was unsafe to ride?"

We note from the complaint that there was no allegation that the defendant failed to warn the plaintiff-buyer that the horse was unsafe to ride.

The question posed is whether there is any evidence or inferences to be drawn therefrom to support plaintiff's first two allegations of negligence. If there is such evidence, then the issues should have been submitted to the jury.

Plaintiff lived on a farm near Gresham, Oregon, and desired to buy a pinto horse for his family of four boys. Defendant lived on acreage near Beaverton, Oregon, and advertised such a horse for sale. In response thereto, plaintiff and his family went to defendant's place to look at the horse.

The defendant brought the horse in from the pasture and plaintiff's son rode the horse bareback for about five minutes with just a bridle. The horse did not buck or rear. It did turn its head and try to nip him on the leg. Plaintiff inspected the physical condition of the horse and looked in its mouth to examine its teeth and to determine its age. The defendant then saddled the horse without any trouble and plaintiff proceeded to ride him in the pasture. On direct examination plaintiff testified:

"A * * * [T]he horse started bucking and kicking and rearing * * * and the saddle slipped off and I caught my foot in the saddle and this is when my leg turned. * * *."

On cross-examination and in his deposition, plaintiff testified:

"A And at that time we went down by the fence. And at that time the horse reared. And I got my balance in the saddle and the saddle slipped, my foot caught in the stirrup and that is when I twisted my leg.

"Q And that is when you fell?

"A Yes."

■ We conclude that the court did not err in striking plaintiff's first allegation of negligence. We have examined the record and find there is no evidence that the horse "was not 'broken' for saddle riding." The evidence, including photographs, proves conclusively to the contrary.

■ As to plaintiff's second allegation of negligence, there is proof that the defendant had purchased the horse for his daughter, who had lost interest in the horse, and therefore the horse "wasn't ridden enough." There is also testimony that on the occasion of the

[ 608 ]

accident the horse was "spirited," "feisty," and "reared up" and had a tendency to nip at people. However, there is no evidence that defendant knew or should have known that the horse had these characteristics or was dangerous. Plaintiff's own testimony establishes that he was an experienced rider. He was not an amateur; he knew how to handle a horse. He testified:

> "A When the horse reared, the normal thing should be to move your weight to the front. You don't pull on the reins."

At the time the horse reared, plaintiff testified, "* * * I got my balance in the saddle and the saddle slipped * * *."

Plaintiff's own testimony reveals that he was able to respond to the horse's behavior but was caused to fall because the saddle slipped.

In *Brooks v. Mack,* 222 Or 139, 143, 352 P2d 474 (1960), citing *Funkhauser v. Goodrich,* 187 Or 220, 225, 210 P2d 487 (1947), we held, "that the owner of an animal is not responsible for vicious conduct unless the owner had knowledge that the animal had the dangerous disposition."

In *Chance v. Ringling Bros.,* 257 Or 319, 322, 478 P2d 613 (1970), we again held:

> "The general rule is that the owner of a domestic animal such as a dog is not liable for its vicious conduct unless the owner had knowledge of its dangerous disposition. [Citations omitted.]"

The plaintiff relies upon *Brooks v. Mack, supra,* and *Chance v. Ringling Bros., supra.* However, each of those cases can be distinguished on the facts from the case at bar. In *Brooks* the court stated:

> "* * * The total of the testimony could well have caused the jury to believe that the horse was not safe for an *inexperienced rider* and that this was well known to defendant. * * *" 222 Or at 143. (Emphasis added.)

There was evidence that the defendant in that case knew that plaintiff lacked the experience necessary to ride the horse under the circumstances existing. Such

is not the situation in the case at bar. Plaintiff's son had ridden the horse without any trouble, the plaintiff was an experienced rider, and the defendant had no knowledge that it would be unsafe for the plaintiff to ride. In *Chance v. Ringling Bros., supra,* we reiterated the general rule as stated above but distinguished the case because the defendant was an occupier of the premises and conducting a circus and the general public, including the plaintiff, was invited. The animal was not in its natural surroundings, and the dog involved was tied on a chain near other caged animals. Such is not the situation in the case at bar. We conclude that the court properly submitted the case to the jury on the only allegation of negligence which was supported by the evidence and on the allegation which plaintiff himself testified was the cause of his accident — he fell when the saddle slipped.

Plaintiff next contends the court erred in permitting one Leonard Elkins to testify on defendant's behalf as an expert witness. Elkins purchased the horse from defendant after plaintiff's fall. Plaintiff first objected as follows:

"[By counsel] The plaintiff did request from the defendant the name of the purchaser of this horse and we were informed through correspondence from defendant's counsel that they did not know the whereabouts or who the purchaser· was and to put the purchaser on at this late date is a matter of complete surprise to the plaintiff. We have had no opportunity to investigate this testimony."

No proof was offered as to when plaintiff requested the purchaser's name or when he received the correspondence from defendant's counsel. All elements of surprise have not been removed from our adversary trial procedure. Further, the record shows that defendant called witness Elkins only as an expert witness on saddling horses. Defendant's counsel stated, "[b]ecause of the Court's rulings, I will not ask Mr. Elkins questions about the nature of the horse or its conduct during the time he had it," and thereupon con-

cluded his direct examination of the witness. After both counsel had questioned the witness on redirect and recross-examination, the witness was questioned as to what the horse's disposition was to buck or rear. We find no error in this respect as both counsel fully interrogated the witness.

Plaintiff also argues that Elkins, being only a hobbyist, was not properly qualified as an expert witness on how to saddle a horse. The evidence shows that during his lifetime Elkins had owned, ridden, and saddled many horses. An expert's qualification is addressed to the trial court's discretion, subject to review for an abuse only. *Meyer v. Harvey Aluminum,* 263 Or 487, 489, 501 P2d 795 (1972); *Wulff v. Sprouse-Reitz Co., Inc.,* 262 Or 293, 305, 498 P2d 766 (1972); *Denny v. Warren,* 239 Or 401, 408, 398 P2d 123 (1964). Further, Elkins' expert testimony was not detrimental to plaintiff's case, and plaintiff relied on it stating, "[t]he testimony of Mr. Elkins was submitted as an expert and he did testify that a reasonable prudent man would test the tightness of the cinch after it is saddled to see that it was a proper tightness. * * * He did testify the saddle would slip if not properly cinched * * *." We fail to see how the plaintiff can complain about the witness Elkins when he relied on his testimony during the trial.

Finally, plaintiff assigns as error the court's denial of his motion for a mistrial based on defendant counsel's closing argument wherein he "made reference to and highlighted the fact that certain of Plaintiff's medical bills were paid for by medical insurance coverage." The statement made was as follows:

"[By counsel] I look at this hospital record and you folks will have it with you and you will be able to look at it. And counsel says that the plaintiff incurred bills for services and so on. I think you will be interested in seeing on the hospital record who paid the bill. I don't think it was Mr. Moody. I would suggest you look at it."

The hospital record referred to had been introduced by plaintiff. It shows the name of plaintiff's employer and

[ 611 ]

his insurance company. This motion was made by the plaintiff after the jury had retired to the jury room with the exhibits.

Assuming that the indirect injection of insurance into the trial of the case is grounds for a mistrial, we are confronted with the fact that plaintiff failed to bring this matter to the court's attention before the jury was instructed. The jury had retired to the jury room with the exhibits, and the court had no opportunity to give admonishing instructions to the jury to disregard defendant's statement or to excise the matter from the plaintiff's exhibits. Under these circumstances it was too late for the plaintiff to claim that such statement to the jury was grounds for a mistrial. Such a motion should be made before the jury is instructed.

Affirmed.