**Gary W. FORREST,
Defendant–Appellant,**

v.

**Trudi GILLEY, Plaintiff–Appellee.**

**No. 53A019006CV250.**

Court of Appeals of Indiana,
First District.

April 29, 1991.

Opinion on Denial of Rehearing
June 20, 1991.

Robert D. Maas, Rebecca J. Wehling, Jennings & Maas, Carmel, for defendant-appellant.

Patrick W. Harrison, Beck & Harrison, Columbus, Harrell, Clendening & Coyne, Bloomington, for plaintiff-appellee.

BAKER, Judge.

Plaintiff-appellee Trudi Gilley was riding a horse owned by defendant-appellant Gary

Forrest. She fell and subsequently filed suit against Forrest for negligence. Forrest moved for summary judgment. The trial court denied the motion and certified the question for interlocutory appeal. We reverse.

Forrest presents the following restated issues for our review:

I. Whether Forrest, as the horse's owner, owed Gilley a duty of reasonable care.

II. Whether Gilley presented any evidence of breach of that duty.

III. Whether Gilley incurred the risk of her injuries as a matter of law.

IV. Whether Forrest owed a heightened duty to Gilley as a result of her voluntary intoxication.

This being a summary judgment case, we must accept as true all the facts as advanced by the party opposing summary judgment. *Hatton v. Fraternal Order of Eagles, Aerie #4097* (1990), Ind.App., 551 N.E.2d 479, *trans. denied.* Summary judgment is proper only if the facts taken in the light most favorable to the non-movant reveal that no genuine issue of material fact exists. *Downing v. Eubanks* (1990), Ind. App., 557 N.E.2d 1027, 1030.

The facts most favorable to Gilley, the non-movant, reveal she and Forrest met at a bar, where Gilley had been drinking on and off for several hours. After talking for a while, they went to Forrest's house so Forrest could feed his horse. Gilley had consumed approximately 20 drinks by the time they left the bar.

Upon arrival at Forrest's house, Forrest fed his horse and then he and Gilley took the horse for a ride. The horse was docile and well-behaved. Gilley had never ridden before, and as the horse was walking with both Gilley and Forrest astride bareback, Gilley lost her balance and fell, taking Forrest with her. Forrest was unharmed, but Gilley had the wind knocked out of her. Forrest put a saddle on the horse, remounted, and asked Gilley whether she wanted to get back on. After Gilley caught her breath, she responded she had "always heard that if you fell off a horse, you got back up, got back on it." *Record* at 117 (Gilley deposition at 59).

With some difficulty, Gilley remounted, taking position immediately behind the saddle. She told Forrest to let the horse move

on, to "go ahead." *Record* at 118 (Gilley deposition at 59). The horse began running, and Gilley fell off again, sustaining the injuries for which she now seeks compensation.[1]

## DISCUSSION AND DECISION

### I. *Animal Liability*

Horses are domestic animals. *Klenberg v. Russell* (1890), 125 Ind. 531, 534, 25 N.E. 596, 597. The owner of a domestic animal is not liable for injuries caused by the animal unless the animal had dangerous propensities known, or which should have been known, to the owner. *Burgin v. Tolle* (1986), Ind.App., 500 N.E.2d 763; *Doe v. Barnett* (1969), 145 Ind.App. 542, 251 N.E.2d 688. A dangerous propensity is "a propensity or tendency of an animal to do any act which might endanger the safety of person or property in a given situation." *Weaver v. Tucker* (1984), Ind.App., 461 N.E.2d 1159, 1161 (citation omitted). If an individual animal lacks dangerous propensities, "the rule is simply that the owner of a domestic animal is bound to know the natural propensities of the particular class of animals to which it belongs." *Burgin, supra,* 500 N.E.2d at 766. In either event, the owner must exercise reasonable care to guard against the propensities and to prevent injuries reasonably anticipated from them. *Borton v. Lavenduskey* (1985), Ind.App., 486 N.E.2d 639, *reh'g. denied,* 488 N.E.2d 1129, *trans. denied.* Thus, Forrest, as a horse owner, owed a duty of reasonable care to prevent any injuries Gilley might suffer as a result of the horse's dangerous propensities or, in the absence of dangerous propensities, from the horse's class propensities.

Surprisingly, Indiana courts have not had previous occasion to rule on the dangerous propensities required to be shown in a case of a plaintiff's fall from a horse. Other courts have, however, and have reached common sense results. *See, e.g., Deese v. White Belt Dairy Farms, Inc.* (1964), Fla. App., 160 So.2d 543 (judgment. n.o.v. improper—whether defendant was negligent in placing novice rider on recently broken and allegedly dangerous horse was a jury question); *McKinney v. Cochran* (1966), 197 Kan. 524, 419 P.2d 931 (defendant had no knowledge of horse's dangerous propensity to slip); *Fredrickson v. Mackey* (1966), 196 Kan. 542, 413 P.2d 86 (plaintiff did not demonstrate, and defendant had no knowl-

---

1. The record does not reveal whether the "running" Gilley describes was trotting, cantering, or galloping.

edge of, horse's propensity to run off); *Pahanish v. Western Trails, Inc.* (1986), 69 Md.App. 342, 517 A.2d 1122 (plaintiff could not show defendant had knowledge the horses involved had propensities for friskiness and rearing up); *Heald v. Cox* (1972), Mo.App., 480 S.W.2d 107 (defendant had knowledge of horse's propensity to buck, and owed a duty to give bucked-off plaintiff notice of that propensity); *Landes v. H.E. Farms, Inc.* (1991), —— A.D.2d ——, 564 N.Y.S.2d 151 (plaintiff could not show defendant had knowledge horse would throw rider); *Appel v. Charles Heinsohn, Inc.* (1983), 91 A.D.2d 1029, 458 N.Y.S.2d 619, *aff'd.*, 59 N.Y.2d 741, 463 N.Y.S.2d 441, 450 N.E.2d 247 (plaintiff could not show defendant had knowledge horse would gallop off out of control, causing plaintiff to fall).

■ This list is intended to be illustrative, not exhaustive. In any event, whether the dangerous propensity complained of in any given case is bucking, rearing, awkwardness, skittishness, or some other dangerous attribute, Gilley here has failed to allege or demonstrate *any* dangerous propensity on the part of Forrest's horse. Neither has Gilley alleged or demonstrated her injuries stemmed from any propensities common to horses as a class, such as a tendency to roam. *See Doe, supra*, 145 Ind.App. at 548–51, 251 N.E.2d at 692–94. Indeed, all she alleges is that she fell off a moving horse which was moving at her behest. There can be no recovery in such a situation.[2]

## II. *Incurred Risk*

■ The defense of incurred risk is applicable in animal liability cases, *See Hardin v. Christy* (1984), Ind.App., 462 N.E.2d 256, and is generally subject to the terms of the Comparative Fault Act. *See* IND.CODE 34–4–33–2(a). Incurred risk requires a mental state of venturousness on the part of the actor against whom it is asserted, and entails a subjective analysis of the actor's voluntary acceptance of a known risk. *Moore v. Sitzmark Corp., et*

*al.* (1990), Ind.App., 555 N.E.2d 1305, 1308; *Power v. Brodie* (1984), Ind.App., 460 N.E.2d 1241; *Kroger Co. v. Haun* (1978), 177 Ind.App. 403, 379 N.E.2d 1004. The defense of incurred risk is normally a question for the trier of fact. *Kroger Co., supra*, 177 Ind.App. at 407, 379 N.E.2d at 1007. When there is no conflict in the evidence, however, and the only inferences to be drawn are that the actor "a) had actual knowledge of the specific risk, and b) understood and appreciated the risk," incurred risk can be found as a matter of law. *Stainko v. Tri–State Coach Lines, Inc.* (1987), Ind.App., 508 N.E.2d 1362, 1364, *trans. denied.*

■ Here, the specific risk was that Gilley would fall off the horse and be injured, and Forrest is correct that Gilley incurred this risk as a matter of law. She in fact fell twice, getting the wind knocked out of her the first time, and receiving more serious injuries the second time. Gilley was inexperienced with horses, and before she fell the first time she could have maintained she did not understand or appreciate the specific risk of falling and receiving injury.[3] The only inference to be drawn from the first fall, however, is that Gilley then understood and appreciated that she could fall and be injured. The defense requires no more: to find that a plaintiff has incurred the risk does not demand a showing the plaintiff "had prescience that the particular accident and injury which in fact occurred was going to occur." *Hamilton v. Roger Sherman Architects Group, Inc., et al.* (1991), Ind.App., 565 N.E.2d 1136, 1138, n. 3 (citation omitted). There is no question of allocating fault between Forrest and Gilley under IND.CODE 34–4–33–4 because, as we have already held, Forrest was not at fault.

## III. *Effect of Intoxication*

■ Finally, Gilley asks us to hold Forrest was under a heightened duty, beyond that required of Forrest as the horse's owner, to protect her because she was intoxicated. We reject this argument out of hand. In *Colaw v. Nicholson* (1983),

---

**2.** We leave open the questions of liability in a horse fall case in which the defendant is a horse trainer or is otherwise engaged in some type of equestrian business. In doing so, however, we are not attempting to resurrect the licensee/invitee distinction for social guests in premises liability cases so recently abolished by our supreme court in *Burrell v. Meads* (1991), Ind., 569 N.E.2d 637 and its companion cases. Rather, we are merely acknowledging the general rule that one who is in the business of furnish-

ing horses to others has a duty of reasonable care to furnish horses which are fit and suitable for their intended use. *See Fredrickson, supra;* 3A C.J.S. *Animals* § 348.5 (1990 pocket part).

**3.** Horse falls are common, and Gilley's failure to recognize the danger or risk of falling prior to the first fall could have been negligent for purposes of comparative fault, but it could not have been the "voluntary incurrence of a known risk." *Kroger Co., supra*, 177 Ind.App. at 410, 379 N.E.2d at 1009.

Ind.App., 450 N.E.2d 1023, 1026, a case in which an intoxicated man's estate sued the driver of the vehicle which ran over him, this court stated that intoxication "is no excuse for failure to exercise that degree of care for [one's] own safety that a reasonable, prudent man would have exercised under the same or like circumstances. He is held to use the same degree of care as a sober person." While the issue here is not the same as *Colaw*, the principle is similar: in Indiana, a plaintiff's voluntary intoxication does not place a special duty of care towards that plaintiff on another party who did not furnish alcohol to the plaintiff.

### CONCLUSION

Gilley having failed to present a genuine issue of material fact to withstand Forrest's motion for summary judgment, the judgment of the trial court is reversed, and the cause is remanded with instructions to enter summary judgment in favor of Forrest.

RATLIFF, C.J., and SHIELDS, J., concur.

### ON PETITION FOR REHEARING

Plaintiff-appellee Trudi Gilley petitions for rehearing, claiming our earlier opinion in *Forrest v. Gilley* (1991), Ind.App., 570 N.E.2d 934 erred by misdefining the central issue of the case.

Throughout this action, Gilley has insisted it was the personal negligence of the defendant, not any propensity of his horse, which caused her injuries. She misses the point. In the case of a plaintiff's fall from a defendant's horse, it is of course the defendant's act or omission, not the horse's, which may lead to liability. The act or omission, though, is exactly that which we have already discussed: whether Forrest, as the horse's owner, breached his duty of care to Gilley by allowing her to ride his horse. He could have breached that duty only if he knew the horse had a dangerous propensity, and since it is uncontroverted that the horse had no dangerous propensity, there could be no breach.

■ In her petition for rehearing, Gilley not only persists with her illusory distinction between Forrest's acts and the horse's propensities, she has taken her fox hunt even farther afield to assert the horse is

immaterial. She now defines the issue as whether "a person who provides an intoxicated person with additional alcohol for the specific purpose of putting her into a position where she will consent to sexual relations owes to that intoxicated person any duty to use reasonable care to protect her from injury." *Petition for Rehearing* at 2. This issue fails for several reasons.

First, this question was not before the trial court, and questions not before the trial court are not before the appellate tribunal for review. *Williams v. City of Indianapolis* (1990), Ind.App., 558 N.E.2d 884, *trans. denied.* Second, Gilley has not filed a brief in support of her petition for rehearing. Of course, Ind. Appellate Rule 11(A) does not require briefs in support of rehearing petitions, but here, Gilley is asking us to rule on a novel issue without the benefit of argument, a task we are not overly disposed to undertake.[1] Third, there is no causal relationship between Forrest's alleged act and the injuries Gilley suffered: Gilley's injuries are the result of her fall from a horse, not the result of horseplay.

The petition for rehearing is denied.

RATLIFF, C.J. and SHIELDS, J. concur.

---

1. We remind Gilley she may not now file a brief in support of her petition for rehearing. A.R. 11(A) requires briefs be filed simultaneously with petitions for rehearing.