Maria NAVARRO, Plaintiff,

v.

FUJI HEAVY INDUSTRIES, LTD., Defendant.

No. 93 C 3203.

United States District Court,
N.D. Illinois,
Eastern Division.

April 22, 1996.

Sheldon Arnold Brenner, James Shanahan Smith, Brenner & Moltzen, Ltd., Chicago, IL, for Maria Navarro.

Jeffrey Singer, Robert Edward O'Malley, Segal, McCambridge, Singer & Mahoney, Ltd., Chicago, IL, for Subaru of America Operations Corp. and Robert Johnston.

Jeffrey Singer, Robert Edward O'Malley, Paul E. Wojcicki, Segal, McCambridge, Singer & Mahoney, Ltd., Chicago, IL, for Fuji Heavy Industries, Ltd.

## OPINION AND ORDER

NORGLE, District Judge:

Before the court is the motion of Defendant Fuji Heavy Industries, Ltd. ("Fuji") for summary judgment on Count IV, the sole remaining count of Plaintiff Maria Navarro's ("Navarro") Complaint. For the following reasons, the motion is granted.

### I. *Background*

Navarro sustained injuries as a passenger in a 1982 Subaru automobile ("car") which was involved in a single-vehicle accident in July 1992. In Count IV, she seeks recovery from Fuji under a theory of negligent product design of the car. Fuji manufactured the car in August 1981. Navarro claims that Fuji negligently designed or manufactured the car's suspension components, in that they were insufficiently corrosion-resistant, thus causing the accident eleven years later.

Robert Johnston ("Johnston") owned the car and was driving it at the time of the accident. Navarro sat in the front passenger seat of the car, with two children in the back seat. It was cloudy on the day of the accident and had rained the previous day. As to the condition of the roadway pavement, Johnston stated that the state trooper lied when the trooper said in the accident report that the pavement was wet.

Johnston claims that the accident occurred when the car left the road and rolled-over when travelling 40–45 miles per hour near the bottom of a highway entrance ramp. As Johnston drove on the descending, curved ramp, he felt the rear end of the car slide to the edge of the ramp. Although he tried to correct the movement, the passenger-side wheels slid onto the shoulder and into the gravel. When Johnston tried to return the wheels to the road, "the thing flipped." As this occurred, there is no evidence of a speed change. The car flipped two times and landed on all four tires on the side of a hill, with the passenger-side tires lower than the driver-side tires. Navarro ended up under the car after the accident. Johnston, who remained in the car, attempted to turn the wheel while passers-by attempted to push the car off of Navarro. Johnston neither heard nor observed anything unusual prior to the accident.

On the day of the accident, the car's odometer read 124,671 miles. Johnston had driven the car about 35,000 miles after obtaining it with approximately 89,000 miles.[1] The trunk of the car held cans of oil, car parts, a spare tire and jack, rags, funnels, and painting equipment.

It appears that Johnston was the car's fourth owner. Emily Moore of Greenville, Illinois, purchased the car new in June 1982.

---

1. Johnston recorded the odometer mileage on title documents at 73,000, however.

In December 1987, a subsequent owner (Judy Johnson of Villa Park, Illinois) sold the car to Eric Lange of Oak Park, Illinois. Johnston obtained the car in May 1989 from Eric Lange, in exchange for painting Lange's hallway. The car had not been used for a long period of time before Johnston started driving it. Johnston, an apprentice painter, traded painting work which he valued at approximately $550 for the car. At the time of trade, the car was in need of repairs: because of an earlier accident, the car had a bent fender, door, and hood; and the rubber bumper guards were also missing. In May 1989, Johnston replaced the brakes, shock absorbers, fender, hood, clutch, ground cable and ignition switch. Johnston personally helped a mechanic replace the two rear shock absorbers. Replacement of the shock absorbers was the only work performed on the suspension system. There is nothing in the record about maintenance except Johnston's statements.

Johnston never brought the car to a Subaru dealership. He experienced no problems with the car before the accident.

Fuji issued a recall notice on the car's suspension system because of suspension system corrosion problems in 1990. Johnston says he did not receive the notice.

## II. *Discussion*

■ To defeat a motion for summary judgment, the non-movant must marshal evidentiary facts sufficient to raise a genuine issue of material fact. Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Summary judgment shall be rendered where the pleadings, depositions, and admissions of record, together with any affidavits, demonstrate there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Under Rule 56(c), summary judgment is appropriate where a party has failed to establish an essential element of its case for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

Fuji asserts that it is entitled to summary judgment because Navarro cannot establish two essential elements of a *prima facie* negligent product design case. First, Fuji asserts that Navarro cannot demonstrate that her 1992 injuries resulted from a defective and unreasonably dangerous condition of the car which existed when it left Fuji's control in 1981. Second, Fuji states that Navarro cannot demonstrate that Fuji deviated from the applicable standard of care when it designed and manufactured the car.

■ Navarro has pleaded a theory of negligence rather than strict liability. Though, as here, where a plaintiff alleges a "defect in design rather than manufacture, there may be no difference." *Rosen v. Ciba–Geigy Corp.,* 78 F.3d 316 (7th Cir.1996) (citing *Bammerlin v. Navistar Int'l Transp. Corp.,* 30 F.3d 898, 902 (7th Cir.1994); *Flaminio v. Honda Motor Co., Ltd.,* 733 F.2d 463, 467 (7th Cir.1984)). In both strict liability and negligent design actions, plaintiffs must demonstrate that the product was defective when it left manufacturer's control. *Carrizales v. Rheem Mfg. Co., Inc.,* 226 Ill.App.3d 20, 35, 168 Ill.Dec. 169, 589 N.E.2d 569 (1st Dist.1991). The threshold question for determining a defect is whether the product is dangerous because it fails to perform as reasonably expected considering its nature and intended function. *Baltus v. Weaver Div. of Kidde & Co., Inc.,* 199 Ill.App.3d 821, 830, 145 Ill.Dec. 810, 557 N.E.2d 580 (1st Dist. 1990).

■ Furthermore, plaintiffs in negligent design cases must show that the defect was the proximate cause of the injury. *Korando v. Uniroyal Goodrich Tire Co.,* 159 Ill.2d 335, 344, 202 Ill.Dec. 284, 637 N.E.2d 1020 (1994). Manufacturers will not be held liable for injuries which occur when a product simply wears out. *See id.* (holding that a tire manufacturer was not liable for injury allegedly caused by severely worn tires); *Glass v. Allis–Chalmers Corp.,* 789 F.2d 612, 614 (8th Cir.1986) (citation omitted).

■ To prevail against a product manufacturer under a negligent design theory, plaintiffs must also show that the manufacturer had a duty to design something safer. *Car-*

*rizales,* 226 Ill.App.3d at 35, 168 Ill.Dec. 169, 589 N.E.2d 569. The duty to manufacture "reasonably" safe products demands neither the safest design possible nor a design incapable of causing injury. *Baltus v. Weaver Div. of Kidde & Co., Inc.,* 199 Ill.App.3d 821, 829, 145 Ill.Dec. 810, 557 N.E.2d 580 (1st Dist.1990).

■ At a minimum, Navarro must be able to establish a *prima facie* case in order to withstand a motion for summary judgment. *Gilty v. Village of Oak Park,* 919 F.2d 1247, 1250 (7th Cir.1990) (quoting *Morgan v. Harris Trust & Savings Bank,* 867 F.2d 1023, 1027–28 (7th Cir.1989)). Navarro must show that the car was defective when it left Fuji's control, that the defect caused her injuries, and that Fuji had a duty to design something safer. She has not done so.

■ When determining whether a plaintiff has established a *prima facie* case which withstands summary judgment, courts may consider only evidence which would be admissible at trial under the Federal Rules of Civil Procedure. *Whitted v. General Motors Corp.,* 58 F.3d 1200, 1204 (7th Cir.1995). In response to Fuji's motion, Navarro points to the following: Fuji's recall notice regarding the suspension system; an unverified report by Maurice Howes ("Howes"), a "metallurgical consultant"; an affidavit by Crispin Hales ("Hales"), an engineering expert; and a 1991 report by the American Iron and Steel Institute entitled *Cracking Down on Corrosion* ("AISI Report"). The court will discuss each of these documents separately.

■ First, although Fuji argues that the recall notice is irrelevant and should be excluded under Federal Rules of Evidence 401 and 402, the court finds that the notice would be admissible. However, it could only be used for the limited purpose of establishing that the car's suspension system was defective; created nine years after the car's manufacture, the notice would not be admissible to show that Fuji knew or should have known about the defect, or that it failed to use a reasonable standard of care at the time relevant to this lawsuit, the 1981 date of manufacture. *See Carrizales,* 226 Ill.App.3d at 39, 168 Ill.Dec. 169, 589 N.E.2d 569 (stating that evidence of subsequent remedial measures may not be admissible as proof of negligence, though it may be introduced as to feasibility of design).

■ Second, the court finds that the Howes report would not be admissible at trial. The Howes report is unverified and fails to meet the admissibility requirements of Federal Rule of Civil Procedure 56. Rule 56(e) demands that a party opposing summary judgment respond "by affidavit or as otherwise provided in this rule." Fed. R.Civ.P. 56(e). Courts may consider documents not specified in the rule only if an attached affidavit meeting the requirements of Rule 56(e) authenticates the documents. *Oriental Health Spa v. City of Fort Wayne,* 864 F.2d 486, 491 (7th Cir.1988) (determining that courts may consider an edited videotape only if it is properly authenticated and otherwise reliable). Unsworn, the Howes report is not an affidavit, nor does it qualify as one of the materials enumerated in Rule 56(c), nor is it attached to or authenticated by an affidavit. Accordingly, the court must strike the Howes report.

■ Even if the Howes report were admissible, it would only establish that the system was defective, a fact not disputed by Fuji. The critical portion of the Howes report states:

[The car] was operated in the Chicago area, which is located in what is sometimes referred to as the "salt belt[.]" This area was classified as having a severe corrosive environment ... [in the AISI Report].... Vehicle[s] operated under these conditions *must* be designed to resist corrosions and be suitably protected. Examination of many vehicles by the writer suggests that the designers of early imported vehicles were not fully cognizant of conditions in this area of the United States which probably has the most corrosive road conditions in the World far beyond those experienced in most other countries.... When the thinned metal ... finally parted under stress, such as might be caused by cornering, the only thing holding the wheel to the car was the reinforcing plate ..., thus allowing the wheel to move suddenly ...

thus making the car very difficult to control.

(Howes report at 1–2) (emphasis original). The report does not have any bearing on whether Fuji knew or should have known about the defect, whether the defect caused Navarro's injury, or whether Fuji failed to use a reasonable standard of care. The Howes report indicates that the suspension system suffered from a general thinning of the steel and from crevice corrosion due to the absence of the original corrosion protection system. Moreover, the report does not indicate that Fuji knew, or should have known, about the conditions in the "salt belt" in 1981, and does not indicate that Fuji failed to exercise reasonable care. Furthermore, the Howes report states only that the failure of the suspension system *might* have occurred "while cornering," not that the failure caused Navarro's accident. In discussing what might have occurred, Hales does not address the suspension system's potential for failure as the car landed in an upright position on all four wheels. Accordingly, even if the court were to find the Howes report admissible, at best, it could show only that the suspension system was defective.

■ Third, the Hales affidavit would be inadmissible as well. Fuji contends that the affidavit is inadmissible under Federal Rule of Evidence 702.[2] Under Rule 702, "The subject of an expert's testimony must be 'scientific ... knowledge.'" *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 590, 113 S.Ct. 2786, 2795, 125 L.Ed.2d 469 (1993) (footnote omitted), *on remand* 43 F.3d 1311 (9th Cir.1995). The term "scientific" indicates that the conclusions in expert reports must be based on scientific methods and procedures, rather than subjective belief and unsupported speculation. *Id.* See also *Deimer v. Cincinnati Sub–Zero Prods., Inc.,* 58 F.3d 341 (7th Cir.1995). When analyzing expert reports, courts should consider the following: whether theories or techniques can and have been tested, whether it is generally accepted by the scientific community, whether it has been the subject of publication and peer review, and whether it has an acceptable known or potential error rate. *Daubert,* 43 F.3d at 1316. "The focus, of course, must be solely on principles and methodology, not on the conclusions they generate." *Daubert,* 509 U.S. at 595, 113 S.Ct. at 2797. Experts cannot float their conclusions on cushions of air; they must rest those conclusions upon foundations built from reliable scientific explanation.[3] Hales has not done so to Navarro's peril.

The Hales affidavit sets forth no reliable foundation for its conclusions. Hales generally states that his opinions are based on "education; training; experience; knowledge of the literature; inspection of the subject vehicle ... and the accident site ...; photographs of the subject vehicle and accident site; police report; records provided by Subaru of America; the deposition transcript of Robert Johnston; and, the August 26, 1992 report of Dr. Maurice Howes."[4] (Hales Aff. at 1.) He makes no mention of specific Subaru records or testing methods. Immediately thereafter, Hales concludes, "Based upon the foregoing, it is my opinion ... that the proximate cause of the loss of control and rollover accident ... was the structural failure of the rear left suspension arm on ... [the car]." (Hales Aff. at 1–2.) Further, Hales professes that Fuji knew of the defect in the suspension arm because it issued the

---

**2.** Rule 702 states:
> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of opinion or otherwise.

**3.** The court notes that, although Federal Rule of Evidence 705 permits experts at trial to present naked opinions, for purposes of an affidavit at summary judgment, an expert must present only conclusions shown to arise out of a reasoning process based on a firm foundation. *See Resolution Trust Corp. v. O'Bear, Overholser, Smith & Huffer,* 886 F.Supp. 658 (D.Ind.1995).

**4.** The court recognizes that Hales may rely on otherwise inadmissible and unsworn material in forming his conclusions, such as the Howes report. *See Gong v. Hirsch,* 913 F.2d 1269 (7th Cir.1990) (stating that, although the trustworthiness of the underlying data is relevant, an expert may rely on otherwise inadmissible reports, provided that they are of the sort reasonably relied upon by experts).

1990 recall notice but does not even attempt to show a basis for any such knowledge. In addition, like Howes, Hales states that the failure of the suspension arm resulted from progressive corrosion, an undisputed fact. Unlike Howes, however, Hales affirmatively states that the corrosion caused the failure of the suspension arm and the loss of control of the car; again, Hales does not explain how he knows this. Next, Hales states that Fuji was aware that users of the car could not detect the corrosion. Hales does not mention whether corrosion or problems with the suspension arm would be detectable during dealer-performed or other professionally-performed routine or scheduled maintenance. Nothing in the record suggests that Fuji professed to manufacture and sell a maintenance-free car. Hales says that Fuji was aware of the likelihood of injury resulting from a crash after failure of an inadequate suspension arm. Hales intuits that Fuji was aware of the levels of road salt and corrosion to which cars operating in the "Rust Belt" were exposed. Next, Hales proclaims that Fuji knew of the corrosive effects of road salt on automobile suspension arms and that its corrosion prevention system was inadequate to withstand Chicago conditions.

Moreover, Hales continues, "During the course of their design and manufacture of ... [the car] ..., Fuji ... failed to apply the knowledge and skill that was ordinarily used by reasonably well qualified engineers." (Hales Aff. at 3.) Hales makes no attempt to explain what that knowledge or skill would have been. Further, Hales concludes that the accident would not have occurred but for the failure of the suspensions system. He does not discuss situational factors present at the accident such as road conditions, speed, cargo, curve, or decline of the ramp. Finally, Hales' blazons his ultimate conclusion: "[T]he design and manufacture of the rear suspension arm in 1981 was negligent and unreasonable." (Hales Aff. at 3.) Hales does not profess to be an accident reconstruction expert or that he did an accident reconstruction analysis.

Hales has not provided adequate scientific support for these damning conclusions. He cites no published journals, studies, reports, or treatises, nor has he set forth the methodology employed in reaching his conclusions. He does not identify testing or research techniques. There is no reference to peer review of any results reached by Hales. Hales' general description of various documents and litigation-related inspection activity do not satisfy even a liberal reading of the *Daubert* requirements.

However, Hales' statement that failure of the suspension arm caused the accident does not run contrary to Fuji's position and does not materially advance the litigation: Fuji denies not that the system failed, but rather that it was negligent in designing a system that failed after eleven years and 124,000 miles in the "Rust Belt." Moreover, Hales does not attempt to outline the basis for his various conclusions about the state of Fuji's "awareness." Furthermore, Hales includes nothing defining the "reasonable standard of care" in the industry, much less any information showing that Fuji failed to conform to such a standard. He refers to no specific applicable standard. " 'An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process.... [W]hy should a court rely on the sort of exposition ... [a] ... scholar would not tolerate in his professional life?' " *Rosen v. Ciba–Geigy Corp.*, 78 F.3d 316, 318–19 (7th Cir.1996) (quoting *Mid–State Fertilizer Co. v. Exchange Nat'l Bank*, 877 F.2d 1333, 1339 (7th Cir.1989)). Hales' failure to meet *Daubert* requirements renders inadmissible Hales' affidavit, particularly the portions regarding causation, Fuji's awareness, and the applicable amorphous standard of care.

▇▇▇ Fourth, Navarro attaches the AISI report to its submissions. Neither party disputes the accuracy of the information contained in that report. Evidence of standards promulgated by industry, trade, regulatory groups or agencies may be admissible to aid trier of fact in determining the applicable standard of care in negligence actions. *Carrizales v. Rheem Mfg. Co., Inc.*, 226 Ill. App.3d 20, 44, 168 Ill.Dec. 169, 589 N.E.2d 569 (1st Dist.1991). However, the AISI report contains little which could aid the trier of fact in proving any contested issue in the instant case. The report does state that

Japanese automobile manufacturers upgraded their products' corrosion protection between 1980 and 1990 to meet the requirements of North American road conditions. Implicit in the report is the concept that corrosion is a problem for automobile manufacturers, both foreign and domestic. The AISI report also states that "major strides" have been made in the development of cost-effective corrosion protection systems since 1981. However, these statements do not indicate that any Japanese manufacturer, like Fuji, was negligent in the design of their earlier corrosion protection systems. The AISI report does not discuss what car manufacturers should have reasonably done to protect their products from corrosion, or even what they were capable of doing. In short, the AISI report does not aid Navarro in her search for a *prima facie* case.

Navarro had the opportunity to establish such a case. For example, she could have introduced evidence comparing other corrosion protection systems used by other manufacturers in 1981 to Fuji's. She could have introduced evidence regarding testing of comparable products. At a minimum, she could have submitted an expert's report which described scientific methods used in analyzing the evidence. She did not. Navarro has offered no evidence demonstrating that the 1981 Subaru failed to perform as reasonably expected considering its nature and intended function, that a defect was the proximate cause of her injuries, or that Fuji had a duty to design something safer. She did not even establish a corrosion prevention standard of care for 1981 automobile manufacturers, much less that Fuji deviated from such a standard or that it knew or should have known of any unreasonably dangerous condition of the car. As such, Fuji has demonstrated that there are no issues of material fact and that it is entitled to judgment as a matter of law. *See Berry v. Armstrong Rubber Co.*, 989 F.2d 822, 827 (5th Cir.1993) (affirming summary judgment where plaintiff's five experts failed to satisfy the requirements of Rule 703); *Stanczyk v. Black & Decker, Inc.*, 836 F.Supp. 565 (N.D.Ill.1993) (excluding plaintiff's expert conclusions because expert failed to test his conclusions despite the ready facility to do so.)

■ In addition, especially in the absence of Navarro's *prima facie* case, the court considers the argument, raised by Fuji, that the car simply wore out. Fuji was not required to design and manufacture a car that was wholly immune to corrosion. *Korando v. Uniroyal Goodrich Tire Co.*, 159 Ill.2d 335, 202 Ill.Dec. 284, 637 N.E.2d 1020 (1994). Navarro does not contest Fuji's assertion that Fuji did equip the car with a corrosion prevention system. The car, manufactured in 1981 and sold in 1982, withstood eleven years and 124,000 miles in the most corrosive environment in the world, according to Navarro's own proffered expert. Both of Navarro's experts stated essentially that the car's suspension arm simply deteriorated over time. Even if the court were to accept those experts, neither expert's testimony would show that such wear occurred as a result of Fuji's negligence in 1981. Although "age and worn condition may not be enough by themselves to negate liability, . . . increased longevity must yield a progressively stronger inference that a given product . . . was not defective, but failed from extrinsic causes." *Mullen v. General Motors Corp.*, 32 Ill.App.3d 122, 336 N.E.2d 338 (1st Dist.1975) (citation omitted).

■ Even construing evidence and drawing inferences in favor of Navarro, the court finds that Navarro has failed to establish a *prima facie* case of negligent design. *See* Fed.R.Civ.P. 56(c), *Wolf v. Buss (America), Inc.*, 77 F.3d 914, 923 (7th Cir.1996). Where a plaintiff fails to establish such a case, summary judgment in favor of the defendant is appropriate. *Bank of Ill. v. Allied Signal Safety Restraint Systems*, 75 F.3d 1162, 1172 (7th Cir.1996).

### III. *Conclusion*

For the foregoing reasons, the court grants summary judgment in favor of Fuji.

IT IS SO ORDERED.